In The

 Court of Appeals

For The

First District of Texas






NO. 01-02-01101-CV






N.N. A/N/F/ OF A.B., Appellant


V.


THE INSTITUTE FOR REHABILITATION AND RESEARCH, Appellee






On Appeal from the 334th District Court

Harris County, Texas

Trial Court Cause No. 1999-42840






DISSENTING OPINION


 Because there is no evidence in the record to support an award of future mental
anguish, I respectfully dissent. 

 The majority opinion cites Fifth Club, Inc. v. Ramirez, 196 S.W.3d 788 (Tex.
2006), as changing, by an express holding, the standard of appellate review for legal
sufficiency of evidence of future mental anguish damages. In reaching this
conclusion, the majority emphasizes that the Supreme Court's majority opinion in
Fifth Club (1) distinguished Saenz (1) and Parkway (2) as not involving personal injuries
and (2) noted that historically, "some types of disturbing or shocking injuries have
been found sufficient to support an inference that the injury was accompanied by
mental anguish." See id. at 797. There are two problems with the majority's
interpretation of Fifth Club. First, the Fifth Club majority opinion states no express
holding regarding the standard of review. Second, despite recognizing that
disturbing or shocking injuries have warranted a finding of mental anguish, see id.,
the Fifth Club majority opinion does not apply that rule to the issue of future mental
anguish damages. Instead, the majority opinion relies on the evidence of the nature
and duration of the mental anguish and the severity of the injury. Id. at 797-98.

 In Fifth Club, Ramirez, the respondent, and his wife both testified that
Ramirez continued to have the symptoms of his mental suffering at the time of trial,
almost two years after his injury, and that he continued to have disruptions in his
daily routine. The supreme court stated, "The evidence shows the nature of
Ramirez's mental anguish, its lasting duration, and the severity of his injuries, and
is therefore legally sufficient to support future mental anguish damages." Id. The
court further stated, "We believe the severe beating received by Ramirez provided
an adequate basis for the jury to reasonably conclude that he would continue to
suffer substantial disruptions in his daily routine of the kind described in his and his
wife's testimony that he had already suffered in the past." Id. at 798. (Emphasis
added.) Thus the Fifth Club majority opinion based its conclusion on the actual
evidence reflected in the record, not only of the nature of the injury, but also the
evidence of the mental anguish related to the injury and its lasting duration. See id. 
The majority opinion did not, therefore, as the majority opinion does here, infer
future mental anguish damages from the fact of the injury. 

 In our case, the witnesses who had current contact with A.B., and therefore
were in a position to know of any continuing mental suffering, were her mother,
N.N., and her stepfather. Yet, their testimony did not address either A.B.'s present
symptoms of mental suffering or the likelihood of her future suffering. N.N.'s
testimony regarding A.B.'s fears and sadness related primarily to the period of time
that N.N. was in rehabilitation and soon afterwards--a period that terminated
approximately four years before trial. N.N. took A.B. to a psychiatrist, Dr. Scott-Gurnell, in March 1999, but testified that A.B.'s last visit with Dr. Scott-Gurnell was
on April 11, 2000, two years before trial, and N.N. testified that A.B. had not seen
a psychiatrist or psychologist since April 11, 2000. N.N. further testified that A.B.
had been living alone since August 2001. A.B.'s stepfather testified that, on the day
after A.B.'s alleged assault, she acted the way she did before. He did not testify
about any present symptoms of mental suffering. 

 A.B. did not testify at trial. However, her videotaped deposition, which was
taken on December 19, 1999, more than two years before trial, was shown to the
jury, and the court reporter transcribed the testimony for the reporter's record. In
that deposition, A.B. did not testify about any present mental suffering or any
disruption to her daily life that was a result of the assault. 

 The majority refers to the testimony of Dr. Francisco Perez as supporting an
inference of future mental anguish. Dr. Perez was not A.B.'s treating psychologist. 
He was a neuropsychologist hired by A.B.'s attorney to examine A.B. and to testify
regarding his professional opinion of her mental state. According to N.N.'s
testimony, confirmed by Dr. Perez, Dr. Perez interviewed A.B. four times: first on
December 1, 1997, twice in June 1998, and once in December 1999. Thus, his last
examination of A.B. occurred about two and one-half years before trial. 
Accordingly, his testimony regarding the extent of A.B.'s explicit memory
necessarily refers to that time. Dr. Perez did not testify regarding A.B.'s present or
continuing mental suffering. Even if Dr. Perez correctly testified that A.B. is
"incapable" of traditional therapy, that she cannot express her emotions clearly, that
her improving memory will cause her to remember the assault more, and her implicit
memories will not lessen as quickly as her explicit memories, these facts are not
evidence of mental anguish, past, present, or future. 

 Many of the facts stated by the majority are evidence of past mental anguish,
for which A.B. has been compensated. There is no evidence, however, to support
a finding of or award for future mental anguish. Accordingly, I would affirm the
judgment of the trial court.


 Sam Nuchia

 Justice


Panel consists of Justices Nuchia, Jennings, and Alcala.


Justice Nuchia, dissenting.
1. Saenz v. Fidelity & Guar. Ins. Underwriters, 925 S.W.2d 607 (Tex. 1996).
2. Parkway Co. v. Woodruff, 901 S.W.2d 434 (Tex. 1995).